# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DAVID J. PERRAS** ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | FILE NO. 1:19-cv-01831-MHC |
| **THE COCA-COLA COMPANY** ) | |
| **OF NORTH AMERICA** ) | |
| ) | |
| Defendant ) | |

## AMENDED COMPLAINT

## I.  JURISDICTION AND PARTIES

Comes now the Plaintiff, DAVID J. PERRAS, (hereinafter "Plaintiff") and files this Complaint against Defendant, THE COCA-COLA COMPANY, (hereinafter "Defendant") showing the Court as follows:

1.

This is an action pursuant to the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C. §1001 et. seq, for breach of fiduciary duties on the part of Defendant.

2.

Jurisdiction and venue are proper in the United States District Court for the

Northern District of Georgia pursuant to 29 U.S.C. § 1132 (e)(2) because the breach or breaches occurred in this district.

3.

Defendant is a foreign corporation authorized to transact business in the State of Georgia and is subject to the jurisdiction and venue of this court and may be served with process through registered agent, CT Corporation System, 289 S. Culver St., Lawrenceville, GA 30046-4805.

## FACTUAL BACKGROUND

4.

Plaintiff was a long-term employee of Defendant having started with Defendant around 1997.

5.

Plaintiff became disabled due to cancer and was paid under Defendant's disability coverage on July 16, 2009.

6.

Plaintiff continues to receive his long term disability benefits.

7.

Due to his health condition, Plaintiff is treated with high levels of morphine.

8.

Defendant was aware that Plaintiff was on mind altering prescription drugs during all times relevant to the lawsuit.

9.

Since 2010, Defendant has cancelled and reinstated Plaintiff's health insurance benefits once or twice a year.

10.

However, Defendant did pay 80% of the Plaintiff's medical bills while assisting Plaintiff obtain Medicare on or about February 3, 2013.

11.

Around this time, Plaintiff was orally informed that all of his ancillary benefits were transferred to a retiree plan and would continue until his death.

12.

Defendant's human resources department also orally informed Plaintiff that it did not handle the retiree plan and that he should "look" at the retirement plan himself.

13.

Ultimately from July 16, 2009 until May 31, 2016, Plaintiff was provided with all of his health and welfare benefits including his health insurance and had his Core

Life Insurance in the approximate amount of $75,000.00 (1 times his salary at "retirement" and his Supplemental Life Insurance in the approximate amount of $300,000.00 ( 4 times his salary at "retirement").

14.

On May 31, 2016, Plaintiff received a letter from Defendant stating that his employment status should have been terminated effective February 4, 2013, however there was an "administrative error" and Defendant had failed to terminate his status.

15.

The May 31, 2016 letter stated that within sixty (60) days Plaintiff would be terminated and his health and welfare coverage would end.

16.

The May 31, 2016 letter stated that Plaintiff was not entitled to continue his health insurance benefits under COBRA stating that Plaintiff's past coverage would be counted as his COBRA period.

17.

The May 31, 2016 letter did not mention Plaintiff's life insurance at all and did not inform Plaintiff of his rights to convert his life insurance.

18.

Conversion allows an individual to "covert" group coverage in the same or

lesser amount to a permanent individual life insurance policy.

19.

Under conversion, the individual policy and/or policies are issued without a medical exam provided the individual apply and pay the premiums within the application period.

20.

Upon information and belief, Defendant, generally, through its third party administrator provides a package titled "Leaving the Coca -Cola Company" and "What You Need to Know" to an employee when a employee is terminated.

21.

This package explains an employee's conversion rights regarding his life insurance amongst other things.

22.

Plaintiff did not receive this package or any substantive guidance regarding his life insurance from Defendant.

23.

The May 31, 2016 letter also proved to be incorrect in other ways beyond omitting the life insurance information in that Plaintiff actually received his health insurance benefits up to and including December 31, 2018.

24.

In the May 31, 2016 letter, Defendant used a disability date for Plaintiff of February 3, 2010.

25.

On July 29, 2016 Defendant wrote Plaintiff a letter stating that his health and welfare ancillary benefits should have ended three (3) years from the date his long-term disability benefits began.

26.

On or about August 2016, Plaintiff attempted to convert his life insurance.

27.

Plaintiff attempted to convert his life insurance within 60 days of Defendant's July 29, 2016 "termination date" referenced in the May 31, 2016 letter.

28.

Upon information and belief, Plaintiff's attempt to convert his life insurance was made within the time normal frame for making an application to convert insurance which is usually 60 days.

29.

On or about December 14, 2016, Metropolitan Life Insurance Company denied coverage based upon its medical review of Plaintiff's health.

30.

Upon information and belief, Metropolitan Life would not convert Plaintiff's coverage because he should have applied for conversion much earlier (arguably within 60 days of his last day of work), but was never informed by Defendant that he needed to do so and instead was repeatedly informed up until 2016 that he had life insurance coverage.

31.

Defendant's retroactive termination of Plaintiff's welfare benefits resulted in Plaintiff becoming uninsurable as Plaintiff has a serious disabling pre-existing condition.

32.

On or about December 30, 2016, Plaintiff appealed the July 29, 2016 decision pointing out that his date of disability was in year of 2009 and that according to the 2010 and 2012 pension summary plan description the thirty-six (36) month limitation of health and welfare coverage does not apply if you become disabled prior to December 31, 2009.

33.

Plaintiff also pointed out, in his appeal letter, that the date of disability is the date Plaintiff first became disabled, usually the date the participant became eligible

for short-term disability payments or the first day an employee leaves work not the date the person began receiving a long term disability benefit.

34.

Defendant wrote Plaintiff a letter dated February 23, 2017 stating that Plaintiff was not qualified for retirement benefits because he had not reached his early retirement eligibility date when he reached three (3) years of long term disability.

35.

Defendant again stated that the 2010 employee health and welfare plan states that the health benefits may continue until the earlier of the date that the long term disability benefits end, you retire, or three (3) years from the date your long-term disability begins.

36.

Defendant stated that the amendment which changed the coverage due to this event did not include any "grandfathering in" provisions.

37.

On June 15, 2017, Plaintiff, through his attorney wrote Defendant a letter stating that Plaintiff is entitled to continuation of all coverage that he had lost or would shortly lose including health insurance, life insurance, dental insurance, vision insurance and AD&D coverage and that Plaintiff first became disabled on July 16,

8

2009 and that his official date of short-term disability was August 5, 2009.

38.

Plaintiff wrote this letter as an attempt to exhaust administrative remedies for his claims for denial of benefits, breach of fiduciary duties and any other ERISA action.

39.

Plaintiff quoted a portion of the plan which stated that the thirty-six (36) month limitation does not apply if you become disabled prior to December 31, 2009 and the Glossary wherein it states that the date of disability is the date that the participant first became disabled.

40.

On August 2, 2017, Defendant wrote Plaintiff's attorney and stated that there is no "grandfather" language in The Coca-Cola Company medical benefits plan and did not explain why the pension plan summary stated that Plaintiff would not lose his benefits because his date of disability was prior to December 31, 2009.

41.

With that letter Defendant attached the pension plan summary plan description for 2010 and the medical benefits summary plan description for 2010.

42.

The 2010 medical benefits summary plan description arguably does not apply to Plaintiff as he was not an active employee on January 1, 2010 specifically stating that to be eligible for benefits you have to be a full time or part time employee regularly scheduled to work at least 17 and ½ hours per week.

43.

The 2008 medical benefits summary plan description which did apply to Plaintiff stated that "After-Tax health benefits ... can continue (by paying required contributions)... until LTD benefits end or retirement."

44.

Administrative remedies for all causes of action have been exhausted and/or any further attempts to exhaust remedies would have proven futile.

**COUNT 1: BREACH OF FIDUCIARY DUTY AND CLAIM FOR EQUITABLE RELIEF**

45.

The above allegations are hereby re-alleged as if fully set forth herein.

46.

Congress designed ERISA to promote the interests of employees and their beneficiaries in employee benefit plans.

47.

Plan fiduciaries are obligated to discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.

48.

The ERISA fiduciary duty includes the common law duty of loyalty which requires the fiduciaries to deal fairly and honestly with beneficiaries.

49.

It also imposes an affirmative duty on the fiduciaries to convey complete, thorough, and accurate information that is material to a beneficiary's claim and circumstance.

50.

This obligation on fiduciaries includes an obligation to reasonably explain to plan participants and beneficiaries the material terms and conditions of the relevant plan documents and provide them with adequate notice of what they need to do in order to continue their coverage.

51.

Defendant is the Plan Sponsor and Plan Administrator for all health and welfare plans at issue in this complaint.

52.

Defendant is not an insurance company and the claims administrators of the plans involved in this case were the actual insurers of the benefits.

53.

Defendant is a fiduciary obligated to act in a manner consistent with its fiduciary obligations to Plaintiff as a plan participant and to Plaintiff's future beneficiaries of his life insurance.

54.

Defendant failed to act properly and breached its fiduciary obligation to Plaintiff.

55.

These breaches resulted in the loss of all of his ancillary benefits, specifically his health insurance beginning in 2019 and his life insurance benefits provided under the plans.

56.

Defendant never explained why the 2010 Health and Welfare Plan applied to him as he was not an Active Employee.

57.

Defendant never informed Plaintiff of his right to convert his life insurance.

58.

Arguably, Plaintiff has no adequate remedy under ERISA's denial of benefits section due to the fact that health and welfare benefits do not vest as a legal proposition, however Plaintiff does have a remedy under ERISA's "catch-all" section.

59.

Defendant breached its fiduciary duty, not by withholding vested benefits, but by engaging in a systematic pattern of misrepresentation and incompetence that caused Plaintiff to believe that his ancillary benefits would be reinstated ultimately.

60.

Indeed these benefits were denied and reinstated repeatedly.

61.

Plaintiff relied on these misrepresentations to his detriment.

62.

Plaintiff has been financially harmed by his loss of health insurance in that he was unable to financially plan for an eventual loss of health insurance as it was a loss that he could not foresee due to Defendant's actions.

63.

Plaintiff could not convert his life insurance due to Defendant's actions.

64.

ERISA provides a remedy for this conduct under its "catch-all" provision and Plaintiff is entitled to appropriate relief.

65.

This relief includes, but is not limited to:

1. an Equitable Surcharge in the form of monetary "compensation" for the losses resulting from Defendant's breach of fiduciary duty in order to make Plaintiff whole;

2. Reformation of the plan or plans to the extent necessary to equitably address Plaintiff's losses as Defendant waived the plan provision limiting benefits to 36 months by actually paying Plaintiff well beyond that date; and

3. Estoppel placing Plaintiff in the same position that he would have been in had Defendant's representations that he would continue to receive all his ancillary benefits beyond 36 months been truthful.

WHEREFORE, Plaintiff respectfully prays for the following:

(a) an Equitable Surcharge in the form of monetary "compensation" for the

losses resulting from Defendant's breach of fiduciary duty in order to make Plaintiff whole;

(b) Reformation of the plan or plans to the extent necessary to equitably address Plaintiff's losses as Defendant waived the plan provision limiting benefits to 36 months by actually paying Plaintiff well beyond that date;

© Estoppel placing Plaintiff in the same position that he would have been in had Defendant's representations that he would continue to receive all his ancillary benefits beyond 36 months been truthful;

(d) Attorneys' fees and costs of this action, and

(e) Any other equitable and additional relief that this Court deems just and proper.

This 9th day of July.

ROGERS, HOFRICHTER & KARRH, LLC

 s/Heather K. Karrh
Heather K. Karrh
Georgia Bar No. 408379

ROGERS, HOFRICHTER &
  KARRH LLC
225 S. Glynn Street, Suite A
Fayetteville, GA 30214
(770) 460-1118

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this day electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send a copy to the following attorneys of record:

    David Tetrick, Jr.
    Darren A. Shuler

    King & Spalding, LLLP
    1180 Peachtree Street, N.E., Suite 1600
    Atlanta, GA 30309

This 9th day of July, 2019.

    ROGERS, HOFRICHTER & KARRH, LLC

    *s/Heather K. Karrh*
    HEATHER K. KARRH
    Ga. State Bar No. 408379
    Attorney for Plaintiff