# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

DAVID J. PERRAS,

      Plaintiff,

v.

THE COCA-COLA COMPANY OF
NORTH AMERICA,

      Defendant.

CIVIL ACTION FILE

NO. 1:19-CV-1831-MHC

## ORDER

This case comes before the Court on Defendant the Coca-Cola Company of

North America ("Coca-Cola")'s Motion to Dismiss Plaintiff's Amended Complaint

("Motion to Dismiss") [Doc. 12].

## I.    BACKGROUND[1]

---

[1] Because this case is before the Court on a motion to dismiss, the facts are
presented as alleged in the Amended Complaint [Doc. 9]. See Silberman v. Miami
Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

This case is about whether Plaintiff David J. Perras ("Perras") is entitled to relief against his former employer, Coca-Cola, under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), for the loss of medical and life insurance coverage.

Perras was employed by Coca-Cola from around 1997 until he became disabled due to cancer on July 16, 2009, and began receiving short-term disability benefits. Am. Compl. ¶¶ 4-5, see also id. ¶ 37. The employee medical benefits plan in effect at the time Perras began receiving long-term disability ("LTD") benefits provided that medical insurance coverage would end when, among other things, an employee leaves the company, unless coverage is extended.[2] Med. Benefits Summ. Plan Description for U.S. Assocs. (Jan. 1, 2010) ("2010 Plan") [Doc. 12-2] at 53[3]; see Am. Compl. ¶¶ 6, 24. After-tax coverage for an employee

_____

[2] Perras continues to receive long-term disability benefits, and his eligibility for those benefits is not in dispute. See Am. Compl. ¶ 6.

[3] The parties agree that the Court can consider the 2010 Plan without converting the Motion to Dismiss into one for summary judgment because "the attached document is (1) central to the plaintiff's claim and (2) undisputed." See Mem. of Law in Supp. of Def. the Coca-Cola Co.'s Mot. to Dismiss Pl.'s Am. Compl. ("Def.'s Mem.") [Doc. 12-1] at 6 (quoting Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)); Br. in Resp. to Def.'s Second Mot. to Dismiss ("Pl.'s Resp.") [Doc. 13] at 7-8. Because Perras does not dispute the authenticity of the letters attached to the Motion to Dismiss that Coca-Cola sent to him, Pl.'s Resp. at 7, the

on LTD can continue, by paying required contributions, "until the earlier of the date that LTD benefits end, you retire, or 3 years from the date that your LTD begins ("LTD Coverage Period")." 2010 Plan at 54. After-tax coverage for eligible retired employees can continue, by paying required contributions, until the employee's or their surviving eligible dependents' death. Id. at 55.

Since 2010, Coca-Cola has cancelled and reinstated Perras's health insurance benefits once or twice each year. Am. Compl. ¶ 9. Perras's cancer is treated with high levels of morphine, and Coca-Cola was aware that Perras was on mind-altering prescription drugs. Id. ¶¶ 7-8. Coca-Cola paid 80% of Perras's medical bills while assisting him in obtaining Medicare on or about February 3, 2013. Id. ¶ 10. Around this time, Perras alleges that he was orally informed that all of his ancillary benefits were transferred to a retiree plan and would continue until his death.[4] Id. ¶ 11. Coca-Cola's human resources department orally informed Perras that it did not handle the retiree plan and that Perras should look at the retirement plan himself. Id. ¶ 12.

---

Court will also reference them without making any determination as to the accuracy of their contents.

[4] Perras does not allege by whom or what entity he was so informed. See Am. Compl. ¶ 11.

Ultimately, from July 16, 2009, until May 13, 2016, Coca-Cola provided Perras with all of his health and welfare benefits, including medical insurance and life insurance. Id. ¶ 13. This included core life insurance in the amount of approximately $75,000.00 (Perras's salary at "retirement") and supplemental life insurance in the amount of approximately $300,000.00 (four times Perras's salary at "retirement"). Id.

On May 31, 2016, Perras received a letter from Coca-Cola (the "May 31 Letter") [Doc. 12-3] stating that his employment status should have been terminated effective February 4, 2013, but was not due to an administrative error. Id. ¶ 14. The May 31 Letter informed Perras that (1) because of the "administrative error," Coca-Cola "continued to provide [Perras] with inactive health and welfare benefits beyond the effective date of when [his] benefits eligibility should have terminated," (2) within sixty (60) days, Perras's employment with Coca-Cola would be terminated and his long-term health and welfare coverage would end, and (3) Perras was not eligible to continue his health insurance benefits under COBRA because his coverage during the time he was ineligible for those benefits would be counted as his COBRA eligibility period. Id. ¶¶ 15-16; May 31 Letter. Nevertheless, Perras continued to receive his health insurance benefits through December 31, 2018. Am. Compl. ¶ 23.

The May 31 Letter did not reference Perras's life insurance and did not inform him of his right to convert that insurance to a permanent individual life insurance policy. Id. ¶¶ 17-18; May 31 Letter. Perras alleges that Coca-Cola, through its third-party administrator, generally provides terminated employees with packages titled "Leaving the Coca-Cola Company" and "What You Need to Know" that, among other things, explain an employee's life insurance conversion rights. Am. Compl. ¶¶ 20-21. Perras did not receive these packages or any substantive guidance regarding his life insurance. Id. ¶ 22.

On July 29, 2016, Coca-Cola wrote Perras a letter (the "July 29 Letter") [Doc. 12-5] stating that Perras's health and welfare benefits should have ended three years from the date his LTD benefits began.[5] Id. ¶ 25. Coca-Cola informed Perras that he was not eligible for health coverage as a retired employee because he had not met his Earliest Retirement Eligibility Date,[6] which Coca-Cola stated was October 18, 2017, when he reached the three-year mark of the date his LTD coverage began. July 29 Letter.

_____

[5] The July 29 Letter states that it is in response to an email sent by Perras on June 9, 2016, which Coca-Cola treated as an eligibility request for retiree health and welfare benefits. See July 29 Letter.

[6] The parties do not explain how this date is calculated, but it is irrelevant when considering Coca-Cola's Motion to Dismiss.

5

On or about August 2016, and within sixty (60) days of his July 29, 2016, termination date referenced in the May 31 Letter,[7] Perras attempted to convert his life insurance. Am. Compl. ¶¶ 26-28. On or about December 14, 2016, Metropolitan Life Insurance Company ("Metropolitan Life") denied Perras coverage based on its medical review of Perras's health. Id. ¶ 29. Perras alleges that Metropolitan Life would not convert his life insurance coverage because he did not apply for conversion within sixty (60) days of his last day of work. Id. ¶ 30. Coca-Cola never informed Perras that he needed to apply for conversion within this time period, but instead repeatedly informed Perras, until 2016, that he had life insurance coverage. Id.

On or about December 30, 2016, Perras appealed Coca-Cola's determination that he was not eligible for health coverage as a retired employee.[8] See id. ¶ 32;

---

[7] Perras alleges that the normal time frame for making an application to convert insurance is "usually 60 days." Am. Compl. ¶ 28.

[8] Perras, in this letter, and his attorney, in a June 15, 2017, letter, contended that Perras's date of disability was in 2009 and, under the 2010 Plan, the three-year limitation on health coverage for employees on LTD did not apply if disability occured prior to December 31, 2009. See Am. Compl. ¶¶ 32-33, 37, 39. However, Perras now agrees that under the 2010 Plan, his benefits should have ended in February 2013, and he does not assert a claim for denial of benefits. See Pl.'s Resp. at 8. Neither Perras's December 30, 2019, letter nor his attorney's June 15, 2017, letter is attached to the Amended Complaint or Motion to Dismiss.

Letter from Michael Dugger, Coca-Company Benefits Committee, to David Perras (Feb. 23, 2017) ("Feb. 23 Letter") [Doc. 12-6]. On February 23, 2017, Coca-Cola denied Perras's claim for retirement benefits because he had not reached his Earliest Retirement Eligibility Date when he reached three years of LTD. Am. Compl. ¶ 34; Feb. 23 Letter.

On June 15, 2017, as an attempt to exhaust administrative remedies on any ERISA claims, Perras's attorney wrote Coca-Cola a letter contending that Perras was entitled to continuation of his benefits that he had lost or would shortly lose, including his health insurance, dental insurance, vision insurance, accidental death and dismemberment coverage, and life insurance. Am. Compl. ¶¶ 37-38. On August 2, 2017, Coca-Cola responded, denying that Perras was entitled to coverage under the 2010 Plan. See generally id. ¶¶ 40-41.

On April 25, 2019, Perras filed this lawsuit against Coca-Cola. See Compl. [Doc. 1]. Perras's Amended Complaint asserts that Coca-Cola breached its fiduciary duty, not by withholding vested benefits, but by "engaging in a systematic pattern of misrepresentation and incompetence that caused [Perras] to believe that his ancillary benefits would be reinstated ultimately." Am. Compl. ¶ 59. Perras seeks to recover under ERISA's "catch all" provision. Id. ¶ 64; see generally ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only

must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader. <u>Powell v. Thomas</u>, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. <u>Iqbal</u>, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679.

## III. DISCUSSION

The parties agree that, according to the language of the 2010 Plan, Perras's ancillary benefits should have ended in February of 2013. <u>See</u> Def.'s Mem. at 3-4, 7-10; Pl.'s Resp. at 8; Reply in Supp. of Coca-Cola's Mot. to Dismiss Pl.'s Am. Compl. ("Def.'s Reply") [Doc. 14] at 2. For this reason, Perras does not assert an ERISA Section 502(a)(1)(B) claim for denial of benefits but, rather, a Section 502(a)(3) claim for a plan administrator's breach of fiduciary duty. Pl.'s Resp. at 8. Perras contends that as the fiduciary, Coca-Cola had a higher duty than to merely abide by the plan's terms and it breached "its affirmative duties to convey complete, thorough, and accurate information that was material to the Perras'[s] claims and circumstances." <u>Id.</u> at 9.

ERISA establishes the standard by which "a fiduciary shall discharge his duties with respect to a plan." See 29 U.S.C. § 1104(a)(1). Under ERISA Section 502(a)(3),

> [a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3). Perras, as a participant and beneficiary of the 2010 Plan, contends that Coca-Cola breached its fiduciary duties by: (1) informing Perras that he would be covered under its medical plan until his death or until retirement, at which time he would be covered under a retiree health plan; (2) continuing Perras's benefits despite the 2010 Plan's language; (3) and failing to notify Perras of his life insurance conversion rights. Pl.'s Resp. at 9 (citing Am. Compl. ¶ 11, 13, 23), 13-15 (citing Am. Compl. ¶¶ 5-8, 20-22).

## A. Whether Coca-Cola Breached its Fiduciary Duties by Informing Perras That His Benefits Would Continue

Perras contends that Coca-Cola misrepresented his entitlement to benefits by "not only telling him that his benefits would continue, but by actually continuing his benefits" and that he relied on these representations and actions to his detriment. Pl.'s Resp. at 9. As an initial matter, the Amended Complaint does not allege that Coca-Cola told Perras that his health and life insurance would continue;

10

rather, it alleges that Perras "was orally informed"—it is unclear by whom—"that all of his ancillary benefits were transferred to a retiree plan and would continue until his death." See Am. Compl. ¶ 11. It is unclear from the Amended Complaint whether Perras was so informed by Coca-Cola or some other person or entity.

Coca-Cola asserts that it did not breach any fiduciary duty under ERISA Section 502(a)(3) because the plain language of the 2010 Plan specifies when coverage ends and the circumstances of when it can be extended. Def.'s Mem. at 7-8. In response, Perras asserts that Coca-Cola breached its fiduciary duty "by engaging in a systematic patter of misrepresentation and incompetence" that caused him "to believe ancillary benefits would be continued." Pl.'s Resp. at 12.

Perras contends that this case is analogous to Jones v. Am. Life and Accident Ins. Co., 370 F.3d 1065 (11th Cir. 2004), which allegedly establishes that facts similar to those alleged here state a claim for breach of fiduciary duty. Pl.'s Resp. at 10-12. In Jones, a class action complaint, the United States Court of Appeals for the Eleventh Circuit held that "participants in an ERISA-governed plan that rely to their detriment on a fiduciary's misrepresentations of the plan's terms may state a claim for 'appropriate equitable relief' under Section 502(a)(3) if they have no adequate remedy elsewhere in ERISA's statutory framework." Jones,

370 F.3d at 1074. The Eleventh Circuit reversed the district court's dismissal of plaintiff's Section 502(a)(3) claim where the complaint alleged that: (1) "employees were routinely told by the company's management that if they stayed with the company until they were eligible for retirement, they would receive free, lifetime life insurance coverage," (2) the insurer "made false representations about the benefits provided under the plan," and (3) the insurer "breached its duty to accurately communicate benefits to plan participants by sending out letters to large numbers of retirees stating that their life insurance coverage would remain in effect for their lifetime." Id. at 1071-72, 1074 (internal citations and punctuation omitted).

The Eleventh Circuit in Jones analogized the plaintiff's allegations to the "materially indistinguishable circumstances" in In re Unisys Corp. Retiree Med. Benefit ERISA Litig., 57 F.3d 1255 (3d Cir. 1995), where "the administrator . . . consistently misrepresented the plan over a period of years, both orally and in writing, continually representing to its employees that their medical benefits would continue in retirement for their lifetimes," and "the administrator . . . was aware that employees relied on these misrepresentations when planning for their retirement, but did nothing to correct their misunderstanding and instead continued

to reassure employees, repeatedly responding to specific questions about whether retiree benefits could change by assuring employees that they could not." Id. at 1072 (citing In re Unisys, 57 F.3d at 1265-66). The Third Circuit in In re Unisys found that the plaintiff "stated a claim for breach of fiduciary duty based on allegations that the plan administrator had given vague and incorrect answers to them concerning the terms of their plan." Id. (citing In re Unisys, 57 F.3d at 1265-67).

Perras contends that, like the plaintiffs in Jones, he "was repeatedly informed through word and action that his benefits would continue under the plan." Pl.'s Resp. at 12. However, the allegations of the class members in Jones are distinguishable from those in Perras's Amended Complaint. In Jones, the plan, over the course of forty years, "consistently contained language" stating that if employees retired, they would "get to keep all or some" of their group insurance. Jones, 370 F.3d at 1067-68. After the employer merged with another company, the successor company mailed letters "to at least 197 retirees . . . confirm[ing] the amount of each retiree's group life benefit" and stating, "'[t]his amount will remain in effect for your lifetime. No premiums are required for continued coverage under the plan.'" Id. at 1068.

Here, Perras does not allege that Coca-Cola stated in writing that his health and life insurance would continue after three years of LTD or into retirement. In fact, the 2010 Plan says nothing about life insurance and confirms only that that the health insurance coverage (1) ends after three years of LTD and (2) could continue into retirement if an employee is eligible. See 2010 Plan at 53-55. In his Amended Complaint, Perras relies upon a single oral statement, not even attributed to Coca-Cola, that his ancillary benefits would be transferred to a retirement plan and would continue until his death. See Am. Compl. ¶ 11 ("Around this time, Plaintiff was orally informed that all of his ancillary benefits were transferred to a retiree plan and would continue until his death.").

Perras does not allege that Coca-Cola ever represented to him or to anyone else, and certainly not in writing, that his health and life insurance benefits would continue until his death. Rather, the May 31 Letter explained that while Perras continued to be eligible for health and welfare benefits for three years after his LTD effective date of February 3, 2010, Coca-Cola had, because of an administrative error, mistakenly continued to provide those benefits beyond those three years. See May 31 Letter; see also July 29 Letter. Furthermore, while Coca-Cola mistakenly provided Perras benefits under the 2010 Plan when Perras was no longer eligible, Perras cites no authority holding that the act of an employer

14

erroneously providing benefits due to an administrative error is the functional

equivalent of a misrepresentation such that terminating those benefits in according

with the plan's express terms constitutes a breach of fiduciary duty.

Accordingly, taking the facts as alleged by Perras as true, the Court

concludes as a matter of law that Coca-Cola did not breach its fiduciary duties by

(1) erroneously continuing to provide Perras's benefits due to an administrative

error after they should have ceased, or (2) terminating Perras's ancillary benefits

under the 2010 Plan after he was "orally informed" by an unidentified person that

his benefits would continue until his death.

### B.    Whether Coca-Cola Breached its Fiduciary Duties by Failing to Notify Perras of His Life Insurance Conversion Rights

The parties agree that ERISA imposes no general duty to provide conversion

notices for life insurance policies. See Def.'s Mem. at 10-11; Pl.'s Resp. at 13; see

generally Fed. Ins. Co. v. Am. Home Assur. Co., 102 F. Supp. 3d 1354, 1359

(N.D. Ga. 2015) (citations omitted) (stating that ERISA does not require that an

employer provide notice to an employee about his conversion rights for life

insurance policies).  Perras relies upon Estate of Moceri v. Ratner Cos., LC, No.

2:14-cv-579-FTM-29CM, 2015 WL 1538109 (M.D. Fla. Apr. 7, 2015), for the

proposition that "even if ERISA does not itself mandate written notice of

continuance rights, an insurer must provide such notice if the policy in question so

requires." Estate of Moceri, 2015 WL 1538109, at *2 (citation omitted). But Perras, like the plaintiff in Estate of Moceri, "does not allege that the documents governing [his] policy required [the insurer] to provide notice of continuance rights." See id. Perras alleges that Coca-Cola generally provides terminated employees with packages titled "Leaving the Coca-Cola Company" and "What You Need to Know" that, among other things, explain an employee's life insurance conversion rights. Am. Compl. ¶¶ 20-21. In his Response, Perras admits that he does not know "if this package constitutes or contains within it 'plan documents' as defined by ERISA" but speculates that "it is likely that there exists summary plan descriptions or other plan documents in this case which dictate that Defendant must provide such notice." Pl.'s Resp. at 13. However, the Amended Complaint does not allege that plan documents required Coca-Cola to provide Perras a life insurance portability or conversion notice.[9]

Perras also contends that even if the plan documents do not require Coca-Cola to provide a life insurance conversion notice, "special circumstances existed

---

[9] A plaintiff may not amend his complaint by merely including the new allegation in a brief in response to a motion to dismiss. See Brannen v. United States, No. 4:11-CV-0135-HLM, 2011 WL 8245026, at *5 (N.D. Ga. Aug. 26, 2011) (citing Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314 (11th Cir. 2004)); see also United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1361-62 (11th Cir. 2006) (citing Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999)).

at the time of Perras'[s] July 29, 2016[,] termination which gave rise to a fiduciary duty to inform Perras fully." Pl.'s Resp. at 14. According to Perras, the special circumstances were that Coca-Cola terminated Perras's life insurance benefits three years late due to an administrative error, Coca-Cola knew that Perras was out on LTD, and Coca-Cola knew that Perras was on mind-altering drugs due to his cancer. Id. at 14-15.

The general rule in the Eleventh Circuit is that a fiduciary's failure to disclose complete and accurate information in response to participants' questions is a breach of fiduciary duty. See Hamilton v. Allen-Bradley Co., 244 F.3d 819, 827 (11th Cir. 2001). The Amended Complaint does not allege that Perras requested information from Coca-Cola about converting his life insurance. In the absence of such a request, not providing information on life insurance conversion rights is generally not a breach of fiduciary duty. See id. (citation omitted) ("It is undisputed that Hamilton never presented a written request for the claim forms, nor is it disputed that precedent has established that claim forms do not fall within the category of documents covered by § 1024. Therefore, Allen did not have a fiduciary duty to provide Hamilton with claim forms without prior proper solicitation by Hamilton.").

Nevertheless, several courts, including district courts within the Eleventh Circuit, have held that an affirmative duty to inform plan participants of material information, outside of correcting affirmative misstatements, may arise in "special circumstances." See Woods v. S. Co., 396 F. Supp. 2d 1351, 1377 (N.D. Ga. 2005) (citations omitted). "[T]his new affirmative duty to disclose has only been imposed in special circumstances with a potentially extreme impact on a plan as a whole, where plan participants generally could be materially and negatively affected." Hill v. BellSouth Corp., 313 F. Supp. 2d 1361, 1369 (N.D. Ga. 2004) (internal quotation marks omitted) (quoting In re Enron, 284 F. Supp. 2d 511, 559 (S.D. Tex. 2003)). "One type of special circumstance giving rise to a duty to disclose is the fiduciary's own fraudulent misconduct." Pension and Emp. Stock Ownership Plan Admin. Comm. of Comty. Bancshares, Inc. v. Patterson, 547 F. Supp. 2d 1230, 1244 (N.D. Ala. 2008). In addition, "[i]n multiple circuits, courts have held that a fiduciary's awareness of a beneficiary's particular need triggers additional duties to disclose." Harris v. Life Ins. Co. of N. Am., No. 19-CV-04594-JSW, 2019 WL 6769660, at *3 (N.D. Cal. Dec. 11, 2019) (citing Fed. Ins. Co., 102 F. Supp. 3d at 1358-59; Eddy v. Colonial Life Ins. Co. of Am., 919 F.2d 747, 751 (D.C. Cir. 1990); Vest v. Resolute FP US, Inc., 905 F.3d 985, 987-89 (6th Cir. 2018)).

In Fed. Ins. Co., a court in this district found that an employer was acting in a fiduciary capacity when it failed to provide Mathis, an employee diagnosed with terminal cancer who decided to retire, with notice of his conversion rights as to his life insurance policy. Fed. Ins. Co., 102 F. Supp. 3d at 1355, 1359-60. Mathis had basic and supplemental life insurance as part of his employee benefit program. Id. at 1355. The employee manual in effect at the time of the employee's exit interview stated that, when an employee terminated his employment, the human resources manager was required to explain an employee's right to convert the life insurance and the employee was required to sign a notice indicating that those rights had been explained to him. Id. At the time of his exit interview, Mathis was not advised of his right to convert his life insurance benefit. Id. Because Mathis did not convert his group policies to individual policies, the group life insurance lapsed one year before Mathis died, and the insurer declined Mathis's wife's request to convert the group life insurance to individual policies. Id. at 1355-56. The Fed. Ins. Co. parties agreed that the employer "was aware of Mr. Mathis's medical diagnosis and reason for separation at the time of the exit interview but failed to properly advise Mr. Mathis of his right to convert the group life insurance policies into individual policies." Id. at 1357.

Like Coca-Cola does in this case, the plaintiff in Fed. Ins. Co. argued that the employer did not breach its fiduciary duty "because there is no requirement under ERISA that an employer provide notice to an employee about his conversion rights for life insurance policies, as opposed to health insurance." See id. at 1358 (citations omitted). However, the court explained that

> [w]hile [p]laintiff is correct that ERISA does not require such notice, that is not relevant under the holding of Eddy[, 919 F.2d 747,] which states that the duties of an ERISA fiduciary are not limited to those requirements expressly set forth in the statute. The issue is not whether Career Systems Development had to notify participants of life insurance conversion rights in the summary plan description or elsewhere. The critical distinction here is the fact that Career Systems Development had additional specific information about Mr. Mathis that put them on notice that he was not a garden-variety employee separating his employment from the company. The company, instead, was aware of specific facts related to Mr. Mathis's circumstances which made the issue of conversion rights significant to him and, thus, invoked the company's fiduciary duties. There is no indication in the facts of [three other cases] that the plan administrator had any knowledge of special circumstances with respect to the individuals in those cases.

Id. at 1359 (emphasis added). Perras contends that, just as Career Systems Development knew that Mathis was seriously ill, Coca-Cola knew that Perras "was seriously ill and would have a hard time purchasing new coverage" and "conveyed no information to [Perras] at all regarding his life insurance privileges at the time when conversion would have been possible." Pl.'s Resp. at 16.

Like the employer in Fed. Ins. Co., Coca-Cola failed to provide its

employee, Perras, with information about life insurance conversion.[10] Perras

alleges that Coca-Cola did not provide any substantive guidance on his life

insurance and that its human resources department orally informed him "that it did

not handle the retiree plan and that he should 'look' at the retirement plan himself."

See Am. Compl. ¶¶ 12, 22. Critical to the Fed. Ins. Co. court's holding was that

the employer "was aware of specific facts related to [the employee]'s

circumstances which made the issue of conversion rights significant to him and,

thus, invoked the company's fiduciary duties."[11] See Fed. Ins. Co., 102 F. Supp.

---

[10] Perras alleges that Coca-Cola, through its third-party administrator, generally provides terminated employees with packages titled "Leaving the Coca-Cola Company" and "What You Need to Know" that, among other things, explain an employee's life insurance conversion rights. See Am. Compl. ¶¶ 20-21. Perras "obtained a page recently from a former employee" of Coca-Cola and submitted it with his Response "for illustrative purposes only." See Pl.'s Resp. at 13 & Ex. 1. Exhibit 1 states: "If you do not receive a notice of conversion rights at least 15 days before the end of [the 60-day timeframe to apply to the insurance carrier for conversion], the conversation period will be extended. You will have 15 days from the conversion notice date to apply." Id. at Ex. 1. Perras alleges that he did not receive the package or any substantive guidance concerning life insurance from Coca-Cola. Am. Compl. ¶ 22. Thus, even if Exhibit 1 accurately reflects the current information that Coca-Cola generally provides to terminated employees, it does not indicate that Coca-Cola represented anything to Perras about converting his life insurance.

[11] Coca-Cola contends that Fed. Ins. Co. is distinguishable because "the parties stipulated that the alleged ERISA fiduciary had undertaken a contractual duty to provide conversion notices." Def.'s Reply at 11 (citing Fed. Ins. Co., 102 F. Supp.

3d at 1359. Accepting Perras's well-pleaded factual allegations and all reasonable inferences therefrom as true, just as the employer in <u>Fed. Ins. Co.</u> was aware of Mathis's cancer diagnosis, Coca-Cola was aware that Perras became disabled due to cancer. <u>See</u> Am. Compl. ¶¶ 5. This case is different from <u>Fed. Ins. Co.</u> in that Perras did not have an exit interview Coca-Cola that was "focused on [his] medical needs and health insurance." <u>See</u> <u>Fed. Ins. Co.</u>, 102 F. Supp. 3d at 1355. However, Perras had no opportunity for such an interview because of the special circumstance present here and not in <u>Fed. Ins. Co.</u>: Coca-Cola continued to provide Perras with benefits due to an administrative error.

According to the May 31 Letter, Coca-Cola terminated Perras on July 29, 2016. Am. Compl. ¶ 27; May 31 Letter. Perras attempted to covert his life insurance within sixty days of his termination date, "within the normal time frame

---

3d at 1355). Perras does not allege that Coca-Cola's policies required it to provide him with a life insurance conversion notice. <u>See</u> Am. Compl. ¶¶ 20-21. However, it is not evident from the <u>Fed. Ins. Co.</u> opinion whether the fact that the human resources manager was required by the employee manual to explain an employee's right to convert life insurance was determinative of the court's holding. <u>See</u> <u>Fed. Ins. Co.</u>, 102 F. Supp. 3d at 1359 n.2 ("Finally, the court notes that the extent of information an employer needs to provide to an employee might be impacted by language in the plan documents. Plaintiff, here, however, has not provided to the court any information about what was contained in the summary plan description or the plan documents themselves."). Thus, at this stage in the proceedings, the Court does not find that the absence of such a requirement here is fatal to Perras's claim.

for making an application to convert insurance." Am. Compl. ¶¶ 26, 28. Nothing in the Amended Complaint indicates that Perras was aware, before receiving Coca-Cola's May 31 Letter, that his benefits should have ended earlier. Coca-Cola provided Perras with life insurance coverage when he was ineligible for benefits, after he was on LTD for three years. See id. ¶ 13. Due to Coca-Cola's administrative error, Perras was unable to covert his life insurance. See id. ¶ 31.

Based on the allegations in the Amended Complaint, Coca-Cola knew that Perras was disabled, it is reasonable to infer that Coca-Cola knew that this was due to cancer, and Coca-Cola knew that it had erroneously continued Perras's benefits. It is also reasonable to infer that, as the employer who sponsored Perras's benefits and created guides for terminated employees that included information about life insurance conversion, Coca-Cola knew that Perras's conversion rights would be impacted by its error. Thus, Coca-Cola was "aware of specific facts related to [Perras]'s circumstances which made the issue of conversion rights significant to him and, thus, invoked the company's fiduciary duties." See generally Fed. Ins. Co., 102 F. Supp. 3d at 1359. These "special circumstance[s]" created an affirmative duty on Coca-Cola to disclose information about life insurance conversation to Perras. See generally Woods, 396 F. Supp. 2d at 1377. Accepting the well-pleaded factual allegations and all reasonable inferences from them as

true, the Amended Complaint states a claim for breach of fiduciary duty because Coca-Cola failed to inform Perras of his life insurance conversion rights having been aware of the special circumstances involving Perras. See Fed. Ins. Co., 102 F. Supp. 3d at 1359-60.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant the Coca-Cola Company's Motion to Dismiss Plaintiff's Amended Complaint [Doc. 12] is **DENIED**.

**IT IS SO ORDERED** this 24th day of January, 2020.

_Mark H. Cohen_
MARK H. COHEN
United States District Judge