# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

DAVID J. PERRAS,

    Plaintiff,

v.

THE COCA-COLA COMPANY OF NORTH AMERICA,

    Defendant.

Case No. 1:19-cv-01831-MHC

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE COCA-COLA COMPANY'S MOTION FOR SUMMARY JUDGMENT

The Court's January 24, 2020 Order [Doc. No. 17] on The Coca-Cola Company's motion to dismiss left a single claim in this case—Plaintiff's claim that Coca-Cola breached its fiduciary duties under ERISA because it "never informed [him] of his right to convert his life insurance" and he "could not convert his life insurance" in August 2016 "due to [Coca-Cola]'s actions." (Am. Compl. ¶¶ 57, 63.) In particular, Plaintiff alleged in his Amended Complaint that he "did not receive . . . any substantive guidance regarding his life insurance" and that "Metropolitan Life would not convert Plaintiff's coverage because he should have applied for conversion much earlier." (Am. Compl. ¶¶ 22, 30.) At the pleading

stage, the Court accepted those allegations as true under Rule 12 and permitted Plaintiff's claim to proceed.

Now, at the summary judgment stage, however, the undisputed evidence demonstrates that both of Plaintiff's key allegations are false. Plaintiff was, in fact, provided a life insurance conversion notice by MetLife. (See Statement of Undisputed Material Facts ("SUMF") ¶ 9.) He acted on that notice, and his application for conversion coverage was denied due to a disqualifying medical condition, not because it was submitted too late. (See id. ¶¶ 14-15.) Because the key allegations that allowed Plaintiff's sole remaining claim to survive dismissal at the pleading stage are demonstrably false, there are no genuine issues of material fact and Coca-Cola is entitled to summary judgment as a matter of law.

## UNDISPUTED FACTS

Plaintiff David J. Perras is a former Coca-Cola employee. (Id. ¶ 1.) Plaintiff became disabled during his employment and in 2009 began receiving benefits under Coca-Cola's long-term disability ("LTD") program. (Id. ¶ 2.) At the time, Coca-Cola's Health and Welfare Benefits Plan ("Plan") provided that employees receiving LTD benefits could continue to participate in the Plan for a maximum of three years. (Id. ¶ 3.)

On October 18, 2012, Coca-Cola sent Plaintiff a letter notifying him of this three-year limitation. (Id. ¶ 4.) Plaintiff began receiving LTD benefits on February 9, 2010, so his Plan benefits should have ended on February 9, 2013. (Id. ¶ 5.) Due to an administrative error, however, Plaintiff continued to receive Plan benefits, including life insurance, for three additional years. (Id. ¶ 6.) On May 31, 2016, Coca-Cola sent a letter to Plaintiff explaining the administrative error and notifying him that his Plan benefits would be terminated in 60 days. (Id. ¶ 7.)

Plaintiff's life insurance under the Plan was issued by MetLife under a group policy for eligible Coca-Cola employees. (Id. ¶ 8.) Where, as here, an eligible employee experiences a reduction or elimination of coverage under the Plan, MetLife sends written notice of life insurance conversion rights to that employee. (Id.) On August 9, 2016, MetLife mailed a life insurance conversion notice letter to Plaintiff's home address. (Id. ¶ 9.) The notice provided instructions for converting Plaintiff's group life insurance policy into an individual policy, set forth the deadlines for doing so, explained how Plaintiff could begin paying for coverage, and provided MetLife's contact information. (Id. ¶ 10.) Ten days later, on August 19, 2016, Plaintiff called MetLife to inquire about converting his group life insurance coverage. (Id. ¶ 11.) According to MetLife's business records, Plaintiff indicated on this phone call that the estimated premiums for a conversion policy, which did

not require any medical underwriting, were too expensive and he chose not to pursue that policy. (Id. ¶ 12.)

Instead, Plaintiff applied for a different, less expensive life insurance policy that required medical underwriting. (Id. ¶ 13.) On December 14, 2016, MetLife sent Plaintiff a letter declining his application for the alternative policy because he failed to satisfy the applicable medical underwriting standards. (Id. ¶ 14.) Specifically, MetLife denied the application based on information it received from Plaintiff's physician regarding an existing medical condition that predates February 2013, when Plaintiff's benefits should have been terminated under the terms of the Plan. (Id. ¶ 15.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 "mandates" the entry of summary judgment where the party with the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Maxi-Taxi of Fla., Inc. v. Lee Cnty. Port Auth., 301 F. App'x 881, 885 (11th Cir. 2008). This is because there can be no "genuine issue as to any material fact" in the face of "a complete failure of proof concerning an essential element of the nonmoving party's case." Celotex, 477 U.S. at 322; Maxi-Taxi of Fla., Inc., 301 F. App'x at 885. Such a failure "necessarily

4

renders all other facts immaterial" and the Court must enter judgment as a matter of law. Celotex, 477 U.S. at 322. Moreover, "[a]n issue is not genuine if it is unsupported by evidence or if it is created by evidence that is 'merely colorable' or is 'not significantly probative.'" Bank of Am., N.A. v. Sorrell, 248 F. Supp. 2d 1196, 1198 (N.D. Ga. 2002) (internal citation omitted); see Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) ("[C]onclusory allegations without specific supporting facts have no probative value." (citation omitted)).

## ARGUMENT

Under Eleventh Circuit law, Plaintiff must prove three elements to establish an ERISA breach of fiduciary duty claim: (1) that the defendant acted as a fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach caused the claimed loss. See Willett v. Blue Cross & Blue Shield of Ala., 953 F.2d 1335, 1343 (11th Cir. 1992) ("[T]he statute does require that the breach of the fiduciary duty be the proximate cause of the losses claimed."); see also Cervantes v. Invesco Holding Co. (U.S.), No. 1:18-cv-02551-AT, 2019 WL 5067202, at *4 (N.D. Ga. Sept. 25, 2019) ("In stating a claim for breach of fiduciary duty under ERISA, the plaintiff bears the burden of making a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and caused a loss to the plan."). The basis of Plaintiff's remaining claim is that Coca-Cola failed to provide "any substantive

5

guidance regarding [his] life insurance" conversion rights and that "Metropolitan Life would not convert Plaintiff's coverage because he should have applied for conversion much earlier." (Am. Compl. ¶¶ 22, 30.) But the undisputed evidence demonstrates that both of these allegations are false. MetLife provided Plaintiff with a life insurance conversion notice. (SUMF ¶ 9.) And, after Plaintiff declined to apply for conversion coverage that did not require medical underwriting, his application for alternative coverage was denied because he failed to satisfy the applicable underwriting standards—not because his application was untimely. (SUMF ¶ 12, 14.) Accordingly, Plaintiff cannot establish two of the three required elements—breach and loss causation—and his remaining claim should be dismissed.

I. **Coca-Cola Did Not Breach Its Duty to Provide Plaintiff with Life Insurance Conversion Notice.**

The undisputed evidence shows that MetLife properly mailed a life insurance conversion notice to Plaintiff's home address on August 9, 2016. (Id. ¶ 9.) That notice provided all necessary instructions for Plaintiff to convert his group life insurance coverage, including MetLife's telephone number. (Id. ¶ 10.) And on August 19, 2016, ten days after the notice was mailed, Plaintiff called MetLife to inquire about converting his life insurance coverage. (Id. ¶ 11.) This undisputed evidence establishes that Coca-Cola met its duty to provide Plaintiff with life

insurance conversion notice,[1] and that precludes Plaintiff from establishing a necessary element of his claim.

## II. Coca-Cola Did Not Cause the Loss Plaintiff Claims He Suffered when His Application for Continued Coverage Was Denied.

Plaintiff's remaining claim fails for an additional and independent reason: the undisputed evidence demonstrates that the loss Plaintiff purports to have suffered (denial of his application for continued life insurance coverage) was caused by his failure to meet the applicable underwriting standards, and not by the supposed failure to provide him with a conversion notice. Celotex, 477 U.S. at 322. ERISA mandates that "the breach of the fiduciary duty be the proximate cause of the losses claimed." Willett, 953 F.3d at 1343. And the Eleventh Circuit has made clear that "the burden of proof on the issue of causation" rests with Plaintiff. See id. at 1343-44 ("On remand, the burden of proof on the issue of causation will rest on the beneficiaries; they must establish that their claimed losses were proximately caused either by a failure by Blue Cross to cure Mays' breach or knowing participation by Blue Cross in Mays' breach.").

---

[1] In ruling on Coca-Cola's motion to dismiss, the Court determined that a fiduciary duty to provide conversion notice could exist under ERISA, if Plaintiff proved his allegation that Coca-Cola was aware of his "special circumstances". [See Doc. No. 17 at 23.] But even assuming that duty did exist, summary judgment would still be required here because Coca-Cola did not breach it.

Here, Plaintiff cannot establish the required element of loss causation. Indeed, the undisputed evidence demonstrates that MetLife denied Plaintiff's application for continued life insurance coverage because he failed to satisfy the applicable underwriting standards—and not because his application was untimely. (SUMF ¶ 14.) As a result, Coca-Cola is entitled to summary judgment on Plaintiff's remaining claim and this case should be dismissed with prejudice.

## **CONCLUSION**

Plaintiff's Amended Complaint partially survived Coca-Cola's motion to dismiss because the Court was required to accept, under Rule 12, Plaintiff's allegations that "Coca-Cola failed to inform [Plaintiff] of his life insurance conversion rights." [Doc. No. 17 at 23.] The evidence submitted with this summary judgment motion shows that Coca-Cola, through its agent MetLife, told Plaintiff about his life insurance conversion rights, and that Plaintiff exercised those rights by applying for life insurance. The removal of the linchpin of Plaintiff's case "necessarily renders all other facts immaterial" and the Court should enter judgment in Coca-Cola's favor as a matter of law. Celotex, 477 U.S. at 322.

Dated: May 22, 2020

*/s/ Darren A. Shuler*
David Tetrick, Jr.
Georgia Bar No. 713653

dtetrick@kslaw.com
Darren A. Shuler
Georgia Bar No. 644276
dshuler@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street N.E.
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

*Attorneys for Defendant The Coca-Cola Company*