**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DAVID J. PERRAS,<br><br>Plaintiff,<br><br>v.<br><br>THE COCA-COLA COMPANY OF NORTH AMERICA,<br><br>Defendant. | Case No. 1:19-cv-01831-MHC |

# DECLARATION OF MATTHEW LEEPER

Pursuant to 28 U.S.C. § 1746, I, Matthew Leeper, do hereby declare under penalty of perjury that the following is true and correct:

1. My name is Matthew Leeper. I am over the age of 18, and fully competent to make this Declaration in support of Defendant The Coca-Cola Company's ("Coca-Cola") Motion for Summary Judgment and any other purpose authorized by law.

2. I am employed by Metropolitan Life Insurance Company ("MetLife") in the Transition Solutions Operations Unit. I base the statements in this Declaration on my own personal knowledge, public knowledge, and the documents that I have reviewed.

3. MetLife issued a group life insurance policy to Coca-Cola to provide life insurance coverage for certain Coca-Cola eligible employees.

4. MetLife provides written notice of life insurance conversion rights to Coca-Cola employees who experience a reduction or elimination of group life insurance coverage.

5. Attached as Exhibit 1 is a true and correct copy of the August 9, 2016 letter and group life insurance conversion notice that MetLife sent to the indicated address on file for former Coca-Cola employee David Perras.

6. MetLife's business records indicate that, on August 19, 2016, Mr. Perras called MetLife's Transition Solutions Operations Unit to inquire about the conversion process.

7. Conversion allows the individual to "convert" the group life coverage that the individual is losing to a same or lesser amount of coverage under a permanent individual life insurance policy. The individual conversion policy will be issued without the requirement to submit medical information, provided the individual timely applies and pays premium. Because conversion policies do not consider medical information, the premium is expensive.

8. As an alternative to the conversion policy, an individual can provide medical information and if after a review of the medical information that individual

is determined to be insurable, the individual may obtain coverage under an individual policy at a better premium rate than the conversion policy.

9. The conversion policy is guaranteed to be issued if the application is properly submitted, the policy requiring a review of the individual's medical information is not.

10. Both the conversion policy and the alternative policy requiring the submission and review of medical information ('medical underwriting"), must be applied for with a licensed representative.

11. As a result of the above-mentioned August 19, 2016 call to MetLife's Transition Solutions Operations Unit, David Taylor, a licensed representative, was assigned to assist Mr. Perras.

12. According to MetLife's business records, Mr. Perras indicated that the estimated premiums for the conversion policy were too expensive and he chose not to pursue it. Instead, Mr. Perras applied for the alternative policy requiring medical underwriting.

13. On December 14, 2016, MetLife declined Mr. Perras's application for individual life insurance coverage that required medical underwriting because he failed to satisfy the medical underwriting standards. Specifically, MetLife based its decision on medical information received from Mr. Perras's physician, Dr Leah

Tobin, regarding (an) existing condition(s) that dated back to a time before February 2013.

14. Attached as Exhibit 2 is a true and correct copy of the December 14, 2016 letter that MetLife sent to Mr. Perras, informing him that it was declining his application for a policy requiring medical underwriting.

Executed on May 4, 2020.

Matthew Leeper